**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

RONALD TIMMONS,

    Petitioner,

    v.

CASEY M. CAMPBELL,
MARYLAND ATTORNEY GENERAL,

    Respondents.

Civil Action No.: PWG-20-812

## MEMORANDUM OPINION

In an amended response to this Petition for Writ of Habeas Corpus, Respondents assert that the petition is subject to dismissal because it raises procedurally defaulted claims which are otherwise without merit. ECF No. 10 (Supplemental Answer). Petitioner Ronald Timmons filed a reply. ECF No. 11. No hearing is necessary to determine matters pending before the Court. *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts* and Local Rule 105.6 (D. Md. 2018); *see also Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000) (petitioner not entitled to a hearing under 28 U.S.C. §2254(e)(2)). For the reasons that follow, the Petition shall be denied and a certificate of appealability shall not issue.

## BACKGROUND

Mr. Timmons was convicted on two counts of first-degree assault and one count of reckless endangerment in connection with an incident occurring in Baltimore City on July 25, 2016. The Court of Special Appeals summarized the underlying facts of the crime as follows:

> At trial, one of the victims, Ms. [Jazzmine] Jackson, testified that, for several years leading up to the shooting, she and appellant had been in a sexual relationship but that, around the time of the shooting, the relationship had come to an end because appellant had become jealous upon finding out that Ms.

Jackson had been dating the other victim, Mr. [Thomas] Brown. Ms. Jackson also explained that, in the weeks leading up to the shooting, she and appellant had been involved in several incidents concerning Mr. Brown. During one of those incidents, Ms. Jackson and appellant got into a physical argument after the two had a conversation in which Mr. Brown's name "came up." In another incident, appellant called Ms. Jackson's phone while she was with Mr. Brown, and Mr. Brown answered the phone, which he then handed to Ms. Jackson. During the conversation that ensued, appellant told Ms. Jackson that "if he can't have [her], nobody can" and that he was "willin' to die or spend the rest of his life in jail behind [her]."

Regarding the shooting, Ms. Jackson testified that, on July 25, 2016, she and Mr. Brown were walking with Ms. Jackson's one-year-old son, who was in a stroller, up to the Westside Shopping Center to buy some deodorant. According to Ms. Jackson, as her group reached the sidewalk adjacent to the shopping center, appellant drove up in a black Dodge Durango and then "jumped out" of the vehicle holding a gun. After appellant approached Ms. Jackson on foot, the two engaged in a verbal altercation. Ms. Jackson testified that, during the altercation, appellant "musta seen [Mr. Brown] behind [her]" because "he just started shootin'."

Ms. Jackson testified that appellant first shot at Mr. Brown, who "stumbled behind the car that was next to him and fell on the ground." Appellant then "started shootin" in Ms. Jackson's direction. Appellant then walked up to Ms. Jackson, placed the gun against her head, and pulled the trigger, but the bullet "wouldn't come out." Upon realizing that the bullet "wasn't coming out," Ms. Jackson grabbed her son's stroller and tried to run away. Immediately thereafter, appellant fired again, and a bullet struck Ms. Jackson in the shoulder. Ms. Jackson then ran into a nearby store, and appellant fled the scene. Mr. Brown, who was suffering from a gunshot wound to the abdomen, also managed to get inside the store. A few minutes later, after the police had arrived on the scene, Ms. Jackson informed the responding officers that appellant was the shooter. Later that day, the police showed Ms. Jackson a photographic array and asked her to identify the shooter. Ms. Jackson again identified appellant as the shooter.

Baltimore City Police Detective Ernest McMillon testified that he was one of the officers that responded to the scene following the shooting. While on the scene, Detective McMillon received information about "a possible suspect vehicle," which was described as "a black Dodge Durango with a Maryland tag." Upon receiving that information, Detective McMillon "put it over the air." Detective McMillon testified that he then collected several items from the scene, including a "fisherman style hat," which was later submitted for DNA analysis. DNA taken from appellant was later matched to the DNA found on the hat.

A bystander, John Tindal, testified that, on the day of the shooting, he was exiting a store at the Westside Shopping Center when he "heard shots." Mr.

Tindal testified that, after the shots stopped he looked up and observed "a black SUV run off" heading "towards Wilkins Avenue." As the vehicle was driving away, Mr. Tindal recorded the vehicle's license plate number, which he then gave to a police officer who had arrived on the scene following the shooting.

Baltimore City Police Officer Mark Tallmadge testified that he was on patrol in a police vehicle on the day of the shooting when he received a call over his radio about "a shooting at Westside Shopping Center" and "a black Durango" with a particular license plate that had been observed at the scene of the shooting. Officer Tallmadge testified that, soon after receiving that call, he observed a black Dodge Durango with the same license plate number "approaching the intersection of West Baltimore Street and Hilton," which was approximately one and a half miles away from where the shooting occurred. Shortly thereafter, Officer Tallmadge initiated a traffic stop of that vehicle and observed a single occupant, the driver, whom the officer later identified as appellant. Appellant was ultimately arrested. No firearm was recovered from appellant's person or vehicle.

ECF No. 7-1 at 22-24.[1]

On August 17, 2016, Mr. Timmons was indicted and charged with attempted murder, first degree assault, reckless endangerment, and related firearms offenses. ECF No. 7-1 at 3-8. A four-day jury trial in the Circuit Court for Baltimore City resulted first in a verdict finding Mr. Timmons guilty on all charges except the attempted murder counts as they related to Thomas Brown. ECF No. 10-4 at 145-48. When the jury was polled, however, one juror indicated disagreement with the verdict announced. *Id.* at 149. The presiding trial judge, the Honorable Alfred Nance, immediately stopped the poll and sent the jury back to continue deliberations. *Id.* Upon further deliberation, the jury acquitted Mr. Timmons on all charges except the two counts of first-degree assault and one count of reckless endangerment. ECF No. 10-5 at 5-9.

Mr. Timmons initially was sentenced to serve an aggregate sentence of 35 years consisting of two 15-year sentences for first-degree assault and one 5-year sentence for reckless endangerment. ECF No. 10-6 at 44-45. Mr. Timmons filed a motion for modification of sentence

---

[1]     Page citations refer to the page numbers assigned by the Court's electronic docketing system.

3

which was granted in part by the trial court.  ECF No. 10-7 at 4-6.  The sentence was modified to an aggregate of 15 years with five years concurrent and 15 years suspended in favor of five years of probation upon his release from prison.[2]  *Id.*

On direct appeal Mr. Timmons raised four grounds for relief, stated by the Court of Special Appeals as follows:

> 1. Did the trial court err in not dismissing appellant's convictions after the jury returned an inconsistent verdict?
>
> 2. Did the trial court err in not declaring a mistrial and in compelling the jury to continue deliberations after a polling of the jury revealed that the jury's verdicts were not unanimous?
>
> 3. Was the evidence insufficient to support appellant's convictions?
>
> 4. Did the trial court commit plain error when it instructed the jury on the elements of first-degree assault?
>
> 5. Did the trial court err in limiting defense counsel's cross-examination of a State's witness?

ECF No. 7-1 at 21.  The appellate court declined to address questions one, two, and four because they were not preserved for appellate review.  The court also found that the evidence was sufficient to support Mr. Timmons' convictions and that the trial court did not err in limiting defense counsel's cross-examination of Ms. Jackson.

Mr. Timmons' petition for writ of certiorari filed in the Maryland Court of Appeals was denied on November 20, 2019.  *Id.* at 40-79; *Timmons v. State*, 466 Md. 325 (2019) (Table).  He did not seek post-conviction relief in the state courts prior to filing his petition in this Court.

Mr. Timmons' petition was filed in this Court on March 26, 2020 and is timely.  ECF No. 1.  The claims asserted by Mr. Timmons are set forth below.

---

[2]     The Court of Special Appeals and Respondents' Answer both incorrectly state that Mr. Timmons is serving a 35-year aggregate term.

## STANDARD OF REVIEW

An application for writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).  The federal habeas statute at 28 U.S.C. § 2254 sets forth a "highly deferential standard for evaluating state-court rulings" *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Bell v. Cone*, 543 U.S. 447 (2005).  The standard is "difficult to meet," and requires courts to give state-court decisions the benefit of the doubt. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks and citations omitted); *see also White v Woodall,* 572 U.S.415, 419-20 (2014), quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011) (state prisoner must show state court ruling on claim presented in federal court was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement.").

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: 1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States"; or 2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court 1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or 2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Under the "unreasonable application" analysis under 2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101

(quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  Thus, "an unreasonable application of federal law is different from an incorrect application of federal law."  *Id*. at 785 (internal quotation marks omitted).

Further under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010).  "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," a federal habeas court may not conclude that the state court decision was based on an unreasonable determination of the facts.  *Id*.  "[A] federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly*."  *Renico v. Lett,* 559 U.S 766, 773 (2010).

The habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010).  This is especially true where state courts have "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)."  *Id*. at 379.

Where a petitioner has failed to present a claim to the highest state court with jurisdiction to hear it, whether it be by failing to raise the claim in post-conviction proceedings or on direct appeal, or by failing to timely note an appeal, the procedural default doctrine applies.  *See Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991) (failure to note timely appeal); *Murray v. Carrier*, 477

U.S. 478, 489-91 (1986) (failure to raise claim on direct appeal); *Murch v. Mottram*, 409 U.S. 41, 46 (1972) (failure to raise claim during post-conviction); *Bradley v. Davis*, 551 F. Supp. 479, 481 (D. Md. 1982) (failure to seek leave to appeal denial of post-conviction relief).   A procedural default also may occur where a state court declines "to consider the merits [of a claim] on the basis of an adequate and independent state procedural rule." *Yeatts v. Angelone*, 166 F.3d 255, 260 (4th Cir. 1999).

> The Fourth Circuit has explained:
>
> If a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim. *See Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991).   A procedural default also occurs when a habeas petitioner fails to exhaust available state remedies and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Id.* at 735 n.1.

*Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998).

If a procedural default has occurred, a federal court may not address the merits of a state prisoner's habeas claim unless the petitioner can show (1) both cause for the default and prejudice that would result from failing to consider the claim on the merits, or (2) that failure to consider the claim on the merits would result in a miscarriage of justice, *i.e.* the conviction of one who is actually innocent.[3]  *See Murray v. Carrier*,  477 U.S. 478, 495-96 (1986); *Breard*, 134 F.3d at 620. "Cause" consists of "some objective factor external to the defense [that] impeded counsel's efforts

---

[3]      Habeas petitioners may use an actual innocence claim to excuse the procedural default of a separate constitutional claim upon which they request habeas relief.  *See Murray v. Carrier*, 477 U.S. at 496.  "[When] a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Id.*; *see also Reid v. True*, 349 F.3d 788, 806 (4th Cir. 2003). Petitioners who wish to use a claim of actual innocence as a gateway to raising an otherwise defaulted constitutional claim must demonstrate by a preponderance of the evidence that a reasonable juror could not have convicted the petitioner in light of the new evidence. *See Buckner v. Polk*, 453 F.3d 195, 199-200 (4th Cir. 2006).  Timmons has not raised an actual innocence claim.

to raise the claim in state court at the appropriate time." *Id.* (quoting *Murray*, 477 U.S. at 488). Even where a petitioner fails to show cause and prejudice for a procedural default, a court must still consider whether it should reach the merits of a petitioner's claims in order to prevent a fundamental miscarriage of justice. *See Schlup v. Delo*, 513 U.S. 298, 314 (1995).

## ANALYSIS

Mr. Timmons raises the following claims in the petition filed with this Court: [1] "The State did not prove each and every element in its case beyond a reasonable doubt. The first-degree assault with a firearm charges (sic) and one count of reckless endangerment could not had happened (sic) without the use of a firearm." ECF No. 1 at 7-9. [2] The conviction violates the Fourteenth Amendment to the United States Constitution because the State's case was based solely on the testimony of Ms. Jackson which was not supported by other evidence. *Id.* at 9-20. [3] "The conviction . . . is in violation of the (1) Maryland common law; (2) Maryland common law double jeopardy principles; and (3) the Fifth Amendment double jeopardy principles." *Id.* at 20. [4] The trial court erred when it restricted defense counsel's cross-examination of Ms. Jackson, the only eyewitness to the shooting. *Id.* [5] The trial court committed plain error in its instruction on first degree assault. *Id.* at 20-21. [6] The trial court erred in not declaring a mistrial but instead, compelled the jury to continue deliberations when it became clear the verdict was not unanimous. *Id.* at 21. Each claim is addressed below.

## A.    Ground One

Mr. Timmons' first claim is procedurally defaulted. He argues that because the jury acquitted him on the handgun charges, the trial court was precluded from convicting him on the first-degree assault charges. He reasons that the first-degree assault charges were premised on the theory that he used a handgun to shoot the victims. Mr. Timmons then takes his rationale a step

further and argues that the "State did not convince the jury of the existence of every fact that constitutes the crime charged." ECF No. 1 at 9.

Essential to Mr. Timmons' claim is his theory that the only way he could be found guilty of first-degree assault is proof that he used a handgun to commit the assault. As Mr. Timmons sees it, the jury's acquittal on the handgun charges is therefore inconsistent with a guilty verdict on the first-degree assault charges. The Court of Special Appeals declined to address the merits of Mr. Timmons' inconsistent verdict claim because it was not preserved for appellate review. Under Maryland law, a criminal defendant must object to inconsistent verdicts prior to the discharge of the jury or the claim is waived. *See Givens v. State*, 449 Md. 433, 438 (2016). The preservation rule is an adequate and independent state-law ground that does not involve a federal question. *See Coleman*, 501 U.S. at 739. Additionally, the rule is firmly established, *James v. Kentucky*, 466 U.S. 341, 348 (1984), and is consistently applied by the Maryland appellate courts, *Johnson v. Mississippi*, 486 U.S. 578, 587 (1988). The claim is thus procedurally barred, foreclosing this Court's opportunity to address the merits absent a showing of cause for default and actual prejudice. Timmons has offered no basis for finding "cause" to excuse the procedural default. ECF No. 11. Federal habeas relief is denied on the first ground asserted.

**B.      Ground Two**

Mr. Timmons' Fourteenth Amendment claim centers on his argument that Ms. Jackson, the only victim who testified at trial, was not a credible witness and no other evidence offered by the State supported her testimony. ECF No. 1 at 9-10. According to Mr. Timmons, none of the other witnesses who testified for the State presented evidence sufficient to meet the State's burden to prove his guilt beyond a reasonable doubt. He states that the other victim, Thomas Brown, made a statement to police that he was not sure he had identified the right man in the photographic array

and that he didn't want to be responsible for sending the wrong man to prison.[4]  *Id.* at 10.  Another witness, John Tindal, who saw a black SUV leaving the parking lot immediately after the shooting and wrote down the license plate number, told police officers who responded to the scene that he did not see the man with a gun get into the SUV.[5]  *Id.*  Mr. Timmons argues that the "problem" with relying only on Ms. Jackson's testimony to establish his guilt is that she "is a liar, . . . an accomplish[ed], practiced, prodigious, cunning liar."  *Id.* at 11.  Mr. Timmons points to Ms. Jackson's admissions during her testimony that she lied to the father of her child and to Mr. Brown about the nature of her relationship with Mr. Timmons, telling each man that Mr. Timmons was her uncle, as proof that she is an unreliable witness.  *Id.*  Mr. Timmons dismisses the DNA evidence found on a hat left at the scene which established the hat was worn by him, stating that the hat does not prove he shot the victims.  *Id.* at 12.  He complains that there was no video recording of the shooting and that despite the fact he was stopped fairly quickly after the shooting, he did not have a firearm in his possession.  *Id.*

The Court of Special Appeals rejected Mr. Timmons' claim that the evidence was insufficient to sustain his convictions.  ECF No. 7-1 at 30-32.  The appellate court reasoned as follows:

> "The test of appellate review of evidentiary sufficiency is whether, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  *Donati v. State*, 215 Md. App. 686, 718 (2014) (citing *State v. Coleman*, 423 Md. 666, 672 (2011)).  That standard applies to all criminal cases, "including those resting upon circumstantial evidence, since, generally, proof of guilt based in whole or in part on circumstantial evidence is no different from proof of guilt based on direct eye-witness accounts."  *Neal v. State*, 191 Md. App. 297, 314 (2010).  Moreover, "[t]he test is 'not whether the evidence

---

[4]      This statement was provided to defense counsel on the first day of trial.  Mr. Timmons has waived any claim of ineffective assistance of trial counsel.

[5]      This information was also provided to the defense but was not presented at trial.

should have or probably would have persuaded the majority of fact finders but only whether it possibly could have persuaded any rational fact finder.'" *Painter v. State*, 157 Md. App. 1, 11 (2004) (citations omitted) (emphasis in original). In making that determination, "[w]e 'must give deference to all reasonable inferences [that] the fact-finder draws, regardless of whether [we] would have chosen a different reasonable inference.'" *Donati*, 215 Md. App. at 718 (citing *Cox v. State*, 421 Md. 630, 657 (2011)). In so doing, "[w]e defer to the fact finder's 'opportunity to assess the credibility of witnesses, weigh the evidence, and resolve conflicts in the evidence[.]'" *Neal*, 191 Md. App. at 314 (citations omitted).

Here, we hold that the evidence was sufficient to sustain appellant's convictions. Ms. Jackson, one of the victims of the shooting, testified and identified appellant as the shooter. *See Handy v. State*, 201 Md. App. 521, 559 (2011) ("It is well settled that the evidence of a single eyewitness is sufficient to sustain a conviction."). In addition, Ms. Jackson testified that appellant was jealous of her relationship with Mr. Brown, the other victim, and that she and appellant had been involved in several incidents concerning Mr. Brown, including one incident that resulted in a physical altercation. That Ms. Jackson may have been, as appellant suggests, "shown to the jury to be a liar," is immaterial. *See Grimm v. State*, 447 Md. 482, 505-06 (2016) ("In its assessment of the credibility of witnesses, a fact-finder is entitled to accept – or reject – all, part, or none of the testimony of any witness, whether that testimony was or was not contradicted or corroborated by any other evidence.") (citations and quotations omitted) (emphasis in original).

Finally, although Ms. Jackson's testimony was, by itself, sufficient to sustain appellant's convictions, additional evidence was adduced at trial to establish appellant's culpability, including testimony that a hat containing appellant's DNA was recovered from the scene; that a black Dodge Durango was seen driving away from the scene immediately after the shooting; that, not long after the shooting, appellant was spotted driving a black Dodge Durango near where the shooting occurred; and that the license plate number of appellant's vehicle matched the license plate number of the vehicle that was observed driving away from the scene of the shooting. Viewing all of the evidence, including Ms. Jackson's testimony, in a light most favorable to the State, we hold that any rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt.

ECF No. 7-1 at 30-32 (brackets in original).

Similarly, the standard of review for a sufficiency of the evidence claim in the context of a federal habeas corpus claim is whether, after viewing evidence in a light most favorable to the prosecution, any rational trier of fact could find essential elements of crime beyond a reasonable

doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  This Court must consider circumstantial as well as direct evidence and allow the government the benefit of all reasonable inferences from the facts proven to the facts sought to be established.  *United States v. Tresvant*, 677 F.2d 1018 (4th Cir. 1982).  More importantly to the instant case, the determination of the credibility of each witness is within the sole province of the jury and is not susceptible to review.  *United States v. Saunders*, 886 F.2d 56 (4th Cir. 1989); *Pigford v. United States*, 518 F.2d 831 (4th Cir. 1975).  The Maryland Court of Special Appeals' analysis of the evidence presented at trial against Timmons is without error as it was not contrary to, nor was it an unreasonable application of, clearly established federal law.  Further, the appellate court's decision was not an unreasonable determination of the facts.

The trial court instructed the jury on the elements of first-degree assault as including proof that either "there was a handgun or firearm used to commit that assault, *or* that there was an intent to commit serious bodily harm."  ECF No. 10-4 at 83 (emphasis added).  The elements of reckless endangerment, the trial court instructed, require the proof "that the defendant engaged in conduct that created a substantial risk of death or serious physical injury to another and . . . that a reasonable person would not have engaged in that conduct" and instructed the jury that the "defendant acted recklessly if he was aware that his conduct created a risk of death or serious physical injury to another and then he consciously disregarded that risk." *Id.* at 83-84.  Mr. Timmons' argument that his right to due process was violated because each element of the crimes with which he was charged were not proved beyond a reasonable doubt is without any legal merit.  ECF No. 11 at 14. The Court of Special Appeals applied the appropriate standard; the elements of each offense were

supported by sufficient evidence of guilt.[6]  The second ground asserted does not present a basis for federal habeas relief.

## C.    Ground Three

Mr. Timmons' third asserted ground is also procedurally defaulted and the merits of the claim may not be reached by this Court absent a showing of cause and prejudice.  He asserts that his conviction violates Maryland common law, Maryland common law double jeopardy principles, and the Fifth Amendment's double jeopardy principles.   ECF No. 1 at 20.   He states that an "acquittal of the lesser included offense operates as a bar to conviction of the flagship offense." *Id*.   The argument is premised on the inconsistent verdicts rendered in his case. *Id*.

The Court of Special Appeals found this claim to be unpreserved for appellate review because defense counsel did not raise it in the trial court below.  ECF No. 7-1 at 29.   The appellate court observed that:

> [W]hen the jury informed the court that it was unable to reach a verdict and the court sent the jury home with instructions to return the next day to continue deliberations, appellant did not object, nor did he ask for a mistrial or otherwise indicate that he wanted the court to take some alternative or additional action. To the contrary, when asked by the court how he would like to proceed, defense counsel stated quite clearly that he would be "fine" to "let them go and bring them back tomorrow," which is precisely what the court did. *See VEI Catonsville, LLC v. Einbinder Props.*, LLC, 212 Md. App. 286, 293-94 (2013) ("The doctrine of acquiescence – or waiver – is that a voluntary act of a party which is inconsistent with the assignment of errors on appeal normally precludes that party from obtaining appellate review.") (citations and quotations omitted). Accordingly, appellant's argument that the court erred in refusing to grant a mistrial and in compelling the jury to continue deliberations is not properly before this Court.

---

[6]      After acknowledging that the appropriate standard is "whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," Mr. Timmons asserts that a different standard should have been applied by the Court of Special Appeals. ECF No. 11 at 16.  He suggests that because the jury acquitted him on the handgun charges, the State failed to prove an essential element of the crime. *Id*.  Mr. Timmons argument would have the Court ignore the elements of first-degree assault and reckless endangerment as set out in the jury instructions.  The argument is without legal merit.

ECF No. 7-1 at 29. As noted *supra*, the procedural rule for preservation of appellate review is an adequate and independent State rule and Mr. Timmons has not offered a basis for finding cause to excuse the failure to preserve the question for review. Additionally, this Court does not find that failing to reach the merits of this claim would result in the miscarriage of justice. The third asserted ground does not state a viable basis for federal habeas relief.

**D.     Ground Four**

Mr. Timmons asserts that the trial court erred when it limited trial counsel's cross-examination of Ms. Jackson. ECF No. 1 at 20. He adopts the argument raised in his appellate brief on direct appeal to support the claim. *Id.* There, he raised a claim that the limitation on cross-examination violated the Sixth Amendment's confrontation clause. ECF No. 10-1 at 29, citing *Merzbacher v. State*, 346 Md. 391, 411-12 (1997). Mr. Timmons states that Ms. Jackson was the only eyewitness to the shooting and that her credibility was therefore central to the State's case. *Id.* at 30. He further states that:

> Nonetheless, the trial court here unduly restricted Mr. Timmons' constitutional right to cross-examine Ms. Jackson and put on a defense. In this cross examination, defense counsel asked Ms. Jackson if she considered herself "an honest person," to which she responded that she did. The defense then proceeded to ask Ms. Jackson about her age (21) what she did for a living (not working) and what her relationship was with Mr. Timmons ("sugar daddy"). Through cross-examination, the defense adduced from Ms. Jackson that during the same time that she saw Mr. Timmons for sex, she was also seeing one boyfriend and then another and that she did not tell either of these two men the exact nature of her relationship with Mr. Timmons. She told one boyfriend that when she was with Mr. Timmons, she helped him with things for which he gave her money and she told the other boyfriend that Mr. Timmons was her uncle. She told neither of them that Mr. Timmons was her sugar daddy. After M[s.] Jackson admitted that she lied to the boyfriends, the defense asked her whether that answer changed her opinion on whether she was an honest person or not. The court sustained the prosecution's objection to this question and instructed the defense to "move on[]." The court also sustained a subsequent prosecution objection to a defense question as to whether there were any other boyfriends or individuals to whom she misrepresented her relationship with Mr. Timmons, on the grounds that it was irrelevant. The court also sustained a prosecution

> objection to the defense question of Ms. Jackson asking her if she was successful
> in convincing Mr. Brown that Mr. Timmons was her uncle because she was
> "very good" at lying, this time on the grounds that the question had be[en]
> "covered."  The court sustained a prosecution objection to the defense question
> of Ms. Jackson of whether it would have been best for her relationship with Mr.
> Brown to have had Mr. Timmons "permanently step aside."

ECF No. 10-1 at 30-32 (internal record cites omitted).  Mr. Timmons argued that the restrictions

on counsel's cross-examination denied him the opportunity to demonstrate to the jury that Ms.

Jackson was not truthful and that she had a motive for lying in her testimony.  *Id.* at 32.  He

concludes that the trial court's decision to sustain the prosecution's objections were "both arbitrary

and disproportional to the purposes limits on cross-examination are designed to serve."  *Id.*

   In addressing this claim, the Court of Special Appeals noted that, "'[t]o comply with the

Confrontation Clause, a trial court must allow a defendant a 'threshold level of inquiry' that

'exposes to the jury the facts from which jurors, as the sole triers of fact and credibility, could

appropriately draw inferences relating to the reliability of the witnesses.'"  ECF No. 7-1 at 36,

(quoting *Peterson v. State*, 444 Md. 105, 122 (2015)).  Juxtaposed against the right to cross-

examine witnesses, trial courts "'retain wide latitude in determining what evidence is material and

relevant, and to that end may limit, in their discretion, the extent to which a witness may be cross-

examined for the purpose of showing bias.'"  ECF No. 7-1 at 36, (quoting *Parker v. State*, 185

Md. App. 399, 426 (2009)).  The Court of Special Appeals relied on the standard announced by

the Court of Appeals in *Manchame-Guerra v. State*, 457 Md. 300, 311 (2018) in assessing Mr.

Timmons' claim.  ECF No. 7-1 at 37.  The Court of Appeals explained that:

> In controlling the course of examination of a witness, a trial court may make a
> variety of judgment calls under Maryland Rule 5-611 as to whether particular
> questions are repetitive, probative, harassing, confusing, or the like.  The trial
> court may also restrict cross-examination based on its understanding of the legal
> rules that may limit particular questions or areas of inquiry.  Given that the trial
> court has its finger on the pulse of the trial while an appellate court does not,
> decisions of the first type should be reviewed for abuse of discretion.  Decisions

based on a legal determination should be reviewed under a less deferential standard. Finally, when an appellant alleges a violation of the Confrontation Clause, an appellate court must consider whether the cumulative result of those decisions, some of which are judgment calls and some of which are legal decisions, denied the appellant the opportunity to reach the 'threshold level of inquiry' required by the Confrontation Clause.

*Id.* The Court of Special Appeals, in applying this standard, found that the trial court afforded defense counsel considerable latitude in cross-examining Ms. Jackson, allowing counsel to elicit testimony from her admitting she had not been truthful with others about the nature of her relationship with Mr. Timmons. ECF No. 7-1 at 38. The court further found that the limitations placed on defense counsel's questions were reasonable because the questions that were the subject of sustained objections were repetitive and concerned matters already brought to light during the cross-examination. *Id.* Further, the appellate court found that the questions regarding whether Ms. Jackson had a desire to have Mr. Timmons '"permanently step aside"' for the benefit of her relationship with Mr. Brown was "collateral and, at best, marginally relevant." *Id.*

The legal standards and principles applied by the Court of Special Appeals mirror those that exist in well-established federal law. *See Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) ("trial judges retain wide latitude . . . to impose reasonable limits on . . . cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant."); *Hoover v. State of Md.*, 714 F.2d 301, 305 (4th Cir. 1983) (trial judge may limit cross-examination after the "constitutionally required threshold level of inquiry has been afforded the defendant."). The Court of Special Appeals' conclusion that the trial court did not err in limiting the cross-examination of Ms. Jackson was not contrary to, nor an unreasonable application of, clearly established Supreme Court precedent and did not involve an unreasonable determination of the facts. The fourth claim asserted does not present a basis for federal habeas relief.

### E.      Ground Five

Mr. Timmons asserts that the trial court erred in its instruction to the jury on first degree assault. ECF No. 1 at 20. He argues that the trial court committed "plain error" when it instructed the jury on both forms of first-degree assault, *i.e.*, assault with a firearm and intentionally causing or attempting to cause serious physical injury. ECF No. 10-1 at 25-26. He reasons that the facts only supported an assault with a firearm and that when a "firearm is used, there is no need nor is there opportunity to show that there was an assault effected by something other than a firearm with the intent to inflict serious bodily harm." *Id.* at 27. He further argued that "the only form of assault for which Mr. Timmons was on trial and the only form of assault the jury could consider was the assault with a firearm as proscribed by Md. Crim. Law Art. § 3-202(a)(2)." *Id.* at 28.

In his argument presented to the Court of Special Appeals, Mr. Timmons sought plain error review because the claim was not preserved for appellate review. Because the jury instruction was not obviously erroneous the appellate court declined to conduct a plain error review. ECF No. 7-1 at 34 (noting that the "instruction given by the court was nearly identical to the Maryland pattern instruction on first-degree assault."). The appellate court further observed that "we fail to see how the alleged error affected the outcome of the proceedings" and "we cannot say that the given instruction seriously affected the fairness, integrity or public reputation of the proceedings." *Id.*

Mr. Timmons' fifth asserted ground is procedurally defaulted and he has offered no cause to excuse the failure to raise it with the State courts. Further, he fails to demonstrate that a miscarriage of justice will result if this Court does not reach the merits of his claim. The fifth asserted ground does not present a basis for federal habeas relief.

### F.      Ground Six

In his final claim, Mr. Timmons asserts that the trial court erred when it did not declare a mistrial when the jury indicated that its first verdict was not unanimous and, instead, required the jury to continue deliberations.  ECF No. 1 at 21.  Mr. Timmons raised this claim with the Maryland Court of Special Appeals and conceded that trial counsel did not object, nor did counsel move for a mistrial.  ECF No. 10-1 at 20-21.  Mr. Timmons argued the trial court abused its discretion when it sent the jury back to continue deliberations stating that "I'm required to require you to continue deliberations."  *Id*. at 21.

The Court of Special Appeals held that this claim was not properly preserved for its review because "[w]hen the jury informed the court that its verdict was not unanimous and the court sent the jury back to the jury room to continue deliberations, appellant did not object or request a mistrial."  ECF No. 7-1 at 29.  As such, this claim is also procedurally defaulted and Mr. Timmons offers no cause for the failure to raise it in the State courts.  Federal habeas relief is denied on this claim.

## CONCLUSION

Having found that the Petition for Writ of Habeas Corpus does not present a claim upon which federal habeas relief may be awarded, this Court must consider whether a certificate of appealability should issue.  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U. S.C. § 2253(c)(2); *see Buck v. Davis*, 137 S.Ct. 759, 773 (2017).  The petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (citation and internal quotation marks omitted), or that "the issues presented are adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  Because this court finds that there has been no substantial showing of

18

the denial of a constitutional right, a certificate of appealability shall be denied.  *See* 28 U. S.C. §

2253(c)(2).  Mr. Timmons  may still request that the United States Court of Appeals for the Fourth

Circuit issue such a certificate.  *See Lyons v. Lee*, 316 F.3d 528, 532 (4th Cir. 2003) (considering

whether to grant a certificate of appealability after the district court declined to issue one).

      A separate Order follows.

1/22/21_____                         _____/s/_____
Date                                            Paul W. Grimm
                                                United States District Judge